IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Heritage Coal & Natural Resources, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>Heritage Holding Co. LLC, Angela Svonavec, Timothy Hunt, Anthony Boyer,<br><br>Defendants. | Civil Action No. 3:25-cv-00059 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff Heritage Coal & Natural Resources, LLC (HCNR) submits this Memorandum of Law in Support of its Motion for Temporary Restraining Order and Preliminary Injunction. Since Saturday, February 22, 2025, agents of Heritage Holding Co., LLC (HHC), at the direction of its manager, Angela Svonavec (Angela), have been harassing and sabotaging HCNR's coal mining operations by illegally entering HCNR's mine sites and disabling its mining equipment. HCNR requests the Court to enter a temporary restraining order and preliminary injunction to stop Defendants' trespasses and return all electronic control modules (ECMs), keys, and other property that Defendants' have stolen from HCNR's mine sites.

**FACTUAL BACKGROUND**

In February 2024, Jason and Angela Svonavec sold HCNR to KTRV, LLC. *See* Ex. 1, Declaration of David Tradburks ¶ 14 (Tradburks Declaration), attached to HCNR's complaint filed simultaneously with this Memorandum. HCNR operates multiple coal mines pursuant to land leases in Pennsylvania and Maryland and operates multiple pieces of leased heavy equipment to conduct its coal operations. *Id.* ¶¶ 2, 18.

1

Following the sale of HCNR, several disputes arose between the parties, which resulted in litigation pending before Judge Stephanie L. Haines at *Banshee Industries LLC v. Heritage Coal & Natural Resources LLC*, 3:24-cv-233 and *Heritage Holding Co., LLC v. KTRV, LLC*, 2:24-cv-1448. As part of this post-sale dispute and after litigation commenced, the seller parties (including Angela and HHC) contended that KTRV owed them certain earn-out payments under the sale agreement. KTRV, however, owes nothing because KTRV has a right to offset the earn-out payments against the losses it incurred as a result of the seller parties' breaches of their representations and warranties under the sales agreement. Instead of allowing the judicial process to resolve these disputes, Angela ordered two of her agents, Timothy Hunt and Anthony Boyer, to sneak onto HCNR's mine sites and sabotage HCNR's mining operations. *Id.* ¶ 13.

On Saturday, February 22, 2025, Mr. Hunt and Mr. Boyer showed up at HCNR's Mine 5 and Beechwood sites in Maryland unannounced and removed the ECMs from two wheel loaders and two bulldozers. *Id.* ¶¶ 3-4. These four pieces of equipment cannot operate without an ECM. *Id.* ¶ 6. After learning of Mr. Hunt's and Mr. Boyer's presence at the mining sites, HCNR foreman Josh Lee drove to the mine sites to stop Mr. Hunt and Mr. Boyer from taking any equipment. *Id.* ¶¶ 4, 6. The sheriff's department was called, and Deputy Sheriff Vanmeter arrived on the scene. *Id.* ¶ 5. Mr. Hunt and Mr. Boyer presented a piece of paper signed by Angela in which she represented that her "agents" could "render unusable" the equipment and represented that "HHC has obtained permission from the landowners to conduct these activities." *Id.* ¶ 13.

Angela's written statements are false. *Id.* ¶ 15. She presented no legal basis to send HHC's agents on a mission to trespass and sabotage the equipment. *Id.* Each landowner has confirmed in writing that the landowner has not given any permission for HHC, Angela, Mr. Hunt, Mr. Boyer, or anyone else to enter their properties. *Id.* In fact, on Monday, February 24,

2025, Mr. Hunt called Steven Jenkins, the chief executive of the company who owns Cabin Run and Carlos. Mr. Hunt sought after-the-fact permission for his illegal entry to Cabin Run and Carlos on Saturday night, February 22nd. Mr. Jenkins denied Mr. Hunt's request and alerted the Sheriff's office. *Id.* ¶ 23.

Despite its falsity, the paper Angela sent with Mr. Hunt and Mr. Boyer had its effect in that Deputy Sheriff Vanmeter could not resolve who had a right to the mining equipment. *Id.* ¶ 7. Nonetheless, before leaving, Deputy Sheriff Vanmeter told Mr. Hunt and Mr. Boyer not to access the equipment until the courts resolved any disputes over ownership. *Id.* He then opened case number IR 2025-02369 and the matter was referred for investigation by Maryland law enforcement. *Id.* ¶ 17.

Instead of leaving HCNR's equipment alone, however, Mr. Hunt and Mr. Boyer carried away the four ECMs that they had obtained from the Mine 5 and Beechwood sites. *Id.* ¶ 8. Later in the day, Mr. Lee visited a third HCNR Maryland mine site, Carlos, and found that the gate had been forced open by its top being cut with a blowtorch. *Id.* ¶ 10. He found that Mr. Hunt and Mr. Boyer were already inside where they had disabled twenty-two pieces of equipment. *Id.* Without this equipment, HCNR has been forced to stop all mining at the Carlos site. *Id.* Mr. Lee again confronted Mr. Hunt and Mr. Boyer, and Mr. Hunt falsely claimed that HHC owned the equipment before the two drove away. *Id.* Mr. Hunt and Mr. Boyer then tried to enter HCNR's Cabin Run mining site, but this time HCNR's employees prevented them from entering. *Id.* ¶ 11. Mr. Hunt and Mr. Boyer assured everyone they would not return to Cabin Run, but HCNR's employees spotted them driving by Cabin Run repeatedly throughout the rest of the day. *Id.*[1]

---

[1] At this time, it appears that Mr. Hunt and Mr. Boyer did remove the ECM to one bulldozer at Cabin Run. That bulldozer was close to a public road. *Id.* ¶ 12.

At 1:30 a.m. on Monday, February 24, 2025, HCNR contractor Richard Kyer spotted two men inside HCNR's Pit 2 mine in Pennsylvania. *Id.* ¶ 18. Upon seeing Mr. Kyer, both men fled in a Ford 250 and took several ECMs from different pieces of equipment with them, including an ECM from a excavator. *Id.* ¶ 19. Although Mr. Kyer was not able to obtain a license plate, the vehicle appeared to have been Mr. Hunt's personal vehicle. *Id.* HCNR's employees again called the police, and Pennsylvania state troopers arrived and collected information. *Id.* ¶ 20. Later that night, Mr. Kyer checked on HCNR's Pit 4 mine and discovered that multiple ECMs had been removed from the bulldozers and excavator, and the keys to several rock trucks were missing. *Id.* ¶ 21. Given the sabotage to the equipment, HCNR can only operate the Pit 2 and Pit 4 mines on a limited basis for a few more days before all operations must cease. *Id.* ¶ 22.

## LEGAL STANDARD

To obtain a temporary restraining order or preliminary injunction, HCNR must establish (1) "a likelihood of success on the merits"; (2) "irreparable harm"; (3) that "granting relief will not result in even greater harm to the nonmoving party"; and (4) that "the public interest favors such relief." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010) (internals omitted). *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012) ("The standard for granting a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as that for issuing a preliminary injunction.").

## ARGUMENT

A.   **HCNR Is Likely to Succeed on the Merits of its Claims**

HCNR has sued HHC, Angela, Mr. Hunt, and Mr. Boyer for trespass at Count One of its Complaint filed simultaneously with this Memorandum. "[T]respass is an unprivileged, intentional intrusion upon land in possession of another." *Ride the Ducks of Phila., LLC v. Duck*

4

*Boat Tours, Inc.*, 138 F. App'x 431, 434 (3d Cir. July 6, 2005); *Hyman v. Capital One Auto Fin.*, 306 F. Supp. 3d 756, 766-67 (W.D. Pa. 2018).[2] Additionally, "[w]here an owner of real property would be able to bring an action in trespass, so too may a licensee bring a common law trespass action if the intrusion by a third party disturbs the terms of the license." *Duck Boat Tours, Inc.*, 138 F. App'x at 434. Instead of respecting the legal process, Angela, as manager of HHC, sent her agents Mr. Hunt and Mr. Boyer to trespass on HCNR's leased property. Ex. 1 Tradburks Declaration ¶ 13. No landowner of any of HCNR's mining sites has given HHC, Angela, her agents, Mr. Hunt, or Mr. Boyer permission to enter these properties, but they intruded on the properties anyways. *Id.* ¶ 15. In short, HCNR will succeed on the merits of its trespass claim.

HCNR has also sued HHC, Angela, Mr. Hunt, and Mr. Boyer for conversion at Count Two of its Complaint. "A conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Pioneer Commercial Funding Corp. v. Am. Fin. Mort. Corp.*, 855 A.2d 818, 827 (Pa. 2004) (emphasis and internal quotation marks omitted).[3] By taking the ECMs without permission, Mr. Hunt and Mr. Boyer interfered with HCNR's ability to use the equipment because HCNR cannot operate the equipment without the ECMs.

Defendants may contend that HHC and Angela had a right to seize the equipment based on a purported security interest in equipment under 13 Pa.C.S.A. § 9609. Even assuming such a right exists (it does not, as the litigation before Judge Haines will show), Mr. Hunt's and Mr.

---

[2] Maryland's trespass tort is essentially the same as Pennsylvania's trespass tort. *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 137 A.3d 355, 374 (Md. Ct. Spec. App. 2016).

[3] Like with trespass, Maryland's conversion tort is essentially the same as Pennsylvania's conversion tort. *Vongohren v. Citimortgage, Inc.*, No. JFM-14-3549, 2016 WL 739070, at *6 (D. Md. Feb. 25, 2016).

Boyer's trespass was a "breach of the peace," thereby making their actions unlawful. In Pennsylvania, a secured party may "render equipment unusable" without judicial process if the debtor has defaulted and "if it proceeds without breach of the peace." 13 Pa.C.S.A. § 9609. "A verbal objection" by the debtor, something Mr. Lee and other HCNR agents repeatedly voiced to Mr. Hunt and Mr. Boyer, "may constitute a breach of the peace." *Gonzalez v. VJ Wood Recovery, LLC*, 726 F. Supp. 3d 399, 404 (E.D. Pa. 2024).[4] Moreover, "unlawfully entering" a debtor's property (i.e. trespassing) constitutes a breach of the peace. *Laurel Coal Co. v. Walter E. Heller & Co., Inc.*, 539 F. Supp. 1006, 1008 (W.D. Pa. 1982) (defendant breached the peace when it sought to regain possession of a bulldozer from a coal company by "cutting a chain used to lock a fence" and trespassing on the coal company's property). Mr. Hunt and Mr. Boyer repeatedly trespassed and even forced open the gate to the Carlos mine site by cutting it with a blowtorch. Ex. 1, Tradburks Declaration ¶ 10. In short, Defendants have breached the peace by trespassing and disabling the equipment, and HCNR will succeed on the merits of its conversion claim.

      Finally, for Count Three of its complaint, HCNR has sued HHC, Angela, Mr. Hunt, and Mr. Boyer for replevin. "Replevin is an action at law to recover the possession of personal property and to recover damages incurred as a result of the defendant's illegal detention of plaintiff's property." *Fenton v. Balick*, 821 F. Supp. 2d 755, 759 (E.D. Pa. 2011); *111 Scheer Lane, LLC v. Triangle Gen. Contracting, Inc.*, 163 A.3d 248, 261 (Md. Ct. Spec. App. 2017). For the reasons already stated, Defendants have taken, and have not returned, the ECMs for HCNR's mining equipment, and therefore HCNR will prevail on a replevin claim.

---

[4] Maryland has the same statute as Pennsylvania. Also, like in Pennsylvania, a debtor's oral objection constitutes a breach of the peace. *Darren Trucking Co. v. Paccar Fin. Corp.*, No. GJH-18-3936, 2019 WL 3945103, at *2 (D. Md. 2019).

B.  **HCNR is Suffering and Will Continue to Suffer Immediate and Irreparable Harm Absent a Temporary Restraining Order and Injunctive Relief**

An owner has suffered irreparable harm when it can "no longer make productive use of its property" because of a defendant's trespass, including when an owner "lack[s] control over . . . equipment located on the site." *7-Eleven, Inc. v. Upadhyaya*, 926 F. Supp. 2d 614, 631 (E.D. Pa. 2013); *Laudermilch v. 730 Tex. Timberlands, II, Ltd.*, 2022 WL 3486769, at *7 (M.D. Pa. Aug. 17, 2022) (same); *SLT Holdings, LLC v. Mitch-Well Energy, Inc.*, 2014 WL 10752253, at *6 (Pa. Super. Ct. Dec. 15, 2014) (unpublished) ("Appellants' actions in entering the property, draining the tanks, and selling the gas, when it may not have had a right to do so, would undoubtedly constitute immediate and irreparable harm."). Here, HCNR has suffered irreparable harm because it can no longer use its mining equipment given that Mr. Hunt and Mr. Boyer removed the ECMs for the equipment. Ex. 1, Tradburks Declaration ¶ 6.

C.  **Granting a Temporary Restraining Order and Preliminary Injunction Will Not Result in Greater Harm to Defendants**

Initially, "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor." *Duck Boat Tours, Inc.*, 138 F. App'x 431 at 434 (internals omitted). With this rule in mind, on the one hand, HCNR has lost the ability to operate dozens of pieces of machinery, which has caused it to shut down or reduce operations at numerous mines. It needs an injunction requiring Defendants to cease trespassing on its properties and an immediate return of all ECMs in order to continue its coal mining activities. On the other side of the balance, Defendants will suffer no harm from an injunction requiring them to stay off HCNR's mining sites and a return of the ECMs. Whatever HHC's grievances might be, they can be addressed in court instead of through middle-of-the-night attempts at burglary and presenting false statements to the police.

Finally, given their numerous trespasses or attempted trespasses to the different mining sites, HHC, through Angela, will likely direct Mr. Hunt, Mr. Boyer, or some other agent to trespass again on one of the properties and sabotage HCNR's equipment.

**D. The Public Interest Strongly Favors Granting a Temporary Restraining Order and Preliminary Injunction**

"[I]f a plaintiff demonstrates both a likelihood of success on the merits and irreparable harm, it almost always will be the case that the public interest will favor the plaintiff." *Inst. For Motivational Living, Inc. v. Sylvan Learning Ctr.*, No. CIV.A. 06-0828, 2008 WL 379654, at *5 (W.D. Pa. Feb. 8, 2008). Further, "the public has a clear interest in ensuring fair business practices." *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 280 (3d Cir. Apr. 3, 2019). Requiring Defendants to stop their illegal and potentially criminal behavior and follow legal process will serve the public interest.

## CONCLUSION

HCNR requests that the Court enter a temporary restraining order and preliminary injunction that will require the Defendants to stop trespassing on HCNR's mine sites and return all ECMs taken by Mr. Hunt and Mr. Boyer within 24 hours. A proposed order to this effect accompanies this Memorandum.

Dated: February 25, 2025						K&L GATES LLP


								By: */s/ Curtis B. Krasik*

									Thomas C. Ryan (Pa Bar ID # 92482)
									Thomas.Ryan@klgates.com
									Curtis B. Krasik (Pa Bar ID #81150)
									Curtis.Krasik@klgates.com
									Nathan Townsend (Pa Bar ID #327215)
									Nathan.Townsend@klgates.com


									K&L Gates Center
									210 Sixth Avenue
									Pittsburgh, Pennsylvania  15222-2613
									Telephone:	+1 412 355 6500
									 Facsimile:	+1 412 355 6501

									***Attorneys for Plaintiff Heritage Coal & Natural Resources, LLC***